UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

GERARDO HERNANDEZ OJEDA,

Petitioner,

v.

WARDEN, CALIFORNIA CITY, *et al.*,

Respondents.

Case No.  1:26-cv-03561   (AMO)

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Re: Dkt. No. 1

Petitioner Gerardo Hernandez Ojeda ("Petitioner") was arrested by U.S. Immigration and Customs Enforcement ("ICE"), a division of the Department of Homeland Security ("DHS"), on February 8, 2026. Proceeding pro se, he filed this petition for a writ of habeas corpus arguing that his detention violated both his procedural and substantive due process rights. *See* Dkt. 1. On May 11, 2026, the Court set a briefing schedule on the Petition and appointed counsel to Petitioner. Dkt. 5. Respondents filed an opposition to the Petition, and Petitioner filed a reply. Dkt. 5, 9. For the reasons that follow, the Petition is GRANTED, and the Court orders Petitioner's immediate release.

**I.    BACKGROUND**

Petitioner entered the United States through Eagle Pass International Bridge "on or about" March 14, 2022, Dkt. 6-1 at 2, and was subsequently apprehended by border patrol, Dkt. 9 at 4. Shortly thereafter, DHS granted Petitioner I-220A status, *i.e.*, Petitioner was released on his own recognizance. Dkt. 1 at 7; Dkt. 9 at 4; *see also* https://www.uscis.gov/save/current-user-agencies/commonly-used-immigration-documents, "Form I-220A, Order of Release on Recognizance" ("U.S. Customs and Border Protection (CBP) and U.S. Immigration and Customs Enforcement (ICE) issue a Form I-220A, Order of Release on Recognizance (PDF), to aliens who

have been placed in removal proceedings and then released on their own recognizance"). That same day, DHS issued Petitioner a work permit and a social security number. Dkt. 1 at 7. Following his release, Petitioner filed an application for asylum and applied for legal permanent residence status. Dkt. 6-1 at 2. Based on the record before the Court, there is no final order of removal against Petitioner.

Despite his prior release into the United States, on February 8, 2026, ICE re-detained Petitioner following an "encounter with law enforcement." Dkt. 6 at 1. Respondents maintain that this encounter was due to an arrest for "impersonating a transport network company," Dkt. 6 at 1—*i.e.*, impersonating an Uber driver, Dkt. 9 at 5. Evidence submitted with Petitioner's Reply indicates that Petitioner was acquitted of the charges associated with this arrest. Dkt. 9-1. He is currently detained at the California City Detention Facility.

## II.     LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III.    DISCUSSION

Petitioner asserts three claims for relief in his Petition, including that his detention violates his substantive due process rights (count 1), his procedural due process rights (count 2), and has caused him irreparable harm (count 3). Because Petitioner's Due Process Clause claim (count 2) affords Petitioner all the relief to which he is entitled—namely, release and a pre-deprivation

United States District Court
Eastern District of California

2

hearing prior to re-detention—the Court need not and does not reach Petitioner's remaining two claims.

### A. The Mandatory Detention Scheme Under 8 U.S.C. § 1225(b) Does Not Apply to Petitioner.

Before turning to the Petitioner's due process claim, the Court notes that the parties dispute which statutory detention authority applies to Petitioner. Respondents argue that "Petitioner is an 'applicant for admission' who is subject to mandatory detention" pursuant to 8 U.S.C. § 1225 ("Section 1225"), and that his "encounter with law enforcement that led to Petitioner's re-detention." Dkt. 6 at 1. This Court aligns with the myriad of district courts that have rejected this argument. *See, e.g.*, *Omer G. G. v. Kaiser*, 815 F. Supp. 3d 1098, 1107 (E.D. Cal. 2025).

While Section 1225 "authorizes the Government to detain certain aliens *seeking admission into the country*," Section 1226 "authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings." *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018) (emphasis added). As such, courts throughout this Circuit have found that where a noncitizen has been previously released on his own recognizance—as Petitioner was here—the government may not reverse course and re-detain the noncitizen under Section 1225. *See, e.g.*, *Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263, at *6 (N.D. Cal. Aug. 21, 2025) (once the government "elect[s] to proceed ... under § 1226, [it] cannot [ ] reverse course and institute § 1225 ... proceedings."); *Ortiz Donis v. Chestnut*, No. 1:25-CV-01228 JLT SAB, 2025 WL 2879514, at *11 (E.D. Cal. Oct. 9, 2025); *Bautista Pico v. Noem*, No. 25-CV-08002-JST, 2025 WL 3295382, *2–3 (N.D. Cal. Nov. 26, 2025) (collecting cases); *Sharan S. v. Chestnut*, No. 1:25-CV-01427-KES-SKO (HC), 2025 WL 3167826, at * 8–9 (E.D. Cal. Nov. 12, 2025); *Singh v. Noem*, No. 26-CV-0932-GPC-MMP, 2026 WL 468159, at *2 (S.D. Cal. Feb. 18, 2026).

Petitioner's "encounter with law enforcement" does not justify application of Section 1225 as Respondents suggest. *See* Dkt. 6 at 1. Respondents do not point to any portions of Section 1225, or case law, suggesting that an encounter with law enforcement justifies application of the statute. Further, as Petitioner notes in his Reply, he was acquitted of all charges concerning an alleged impersonation of an Uber driver. Dkt. 9 at 5. As such, the Court is not persuaded that an

United States District Court
Eastern District of California

3

"encounter" with law enforcement somehow renders Section 1225 applicable here.

**B.    Detaining Petitioner Without Providing a Pre-Deprivation Hearing Violated His Due Process Rights.**

Petitioner contends that his due process rights under the Fifth Amendment were violated when ICE re-detained him without a hearing. *See* Dkt. 1 at 6. Relying on *DHS v. Thuraissigiam*, 591 U.S. 103, 138–40 (2020), Respondents argue that Petitioner's due process rights are limited to those prescribed by statute—specifically Section 1225. This Court rejects this argument because, as multiple courts in this district have explained, "once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *see also Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017) ("[I]t is well-established that the Due Process Clause stands as a significant constraint on the manner in which the political branches may exercise their plenary authority.").

As such, Petitioner's constitutional challenge is analyzed "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (*citing Kentucky Dep't. of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

**1.    Protected Liberty Interest**

Petitioner argues that his release from immigration custody by the affirmative act of the Government pursuant to 8 U.S.C. § 1226 on April 11, 2023, and then the over four years of freedom that followed, gave rise to a protected liberty interest. *See* Dkt. 9 at 9–10. The Court agrees.

The regulations that authorize immigration authorities to release a noncitizen on his own recognizance require that the noncitizen "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons" and that the noncitizen is "likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8). "Release [therefore] reflects a determination

4

by the government that the noncitizen is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018). "Thus, DHS may generally not re-arrest a previously released noncitizen absent a change in circumstances." *Singh*, 2026 WL 468159, at * 2 (internal quotation omitted).

The record before the Court indicates that immigration authorities determined that Petitioner was neither a flight risk nor dangerous when they chose to release him into the United States over four years ago. Petitioner maintains that he was released on his own recognizance, and the government does not dispute this fact. *See* Dkt. 1 at 7. Since then, Petitioner has developed ties in the community—he has applied for asylum, started work, and provides for his wife who also lives in the United States. Dkt. 9 at 4–5.

As such, the Government's election to "release Petitioner under § 1226(a) provided Petitioner with a liberty interest that is protected by the Due Process Clause." *Oliveros v. Kaiser*, No. 25-CV-07117-BLF, 2026 WL 1162724, at *4 (N.D. Cal. Apr. 29, 2026); *see also Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("Just as people on preparole, parole, and probation status have a liberty interest, so too does [the noncitizen] have a liberty interest in remaining out of custody on bond."); *Pinchi v. Noem*, 792 F.Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody."); *He v. Lyons*, No. 25-cv-10639-JSC, 2026 WL 280074, at *3 (N.D. Cal. Feb. 3, 2026) ("Courts throughout the Ninth Circuit have concluded individuals released from immigration custody on bond have a protectable liberty interest in remaining out of custody on bond."); *Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-05259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest). Because Petitioner was released from DHS custody on his own recognizance in 2022, he maintains a protected liberty interest in

United States District Court
Eastern District of California

remaining out of custody.

### 2.    Due Process

Many courts have applied the test established by the Supreme Court in *Mathews v. Eldridge* in considering what process is due in the immigration context. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022). There are three factors relevant to the due process inquiry under the *Mathews* framework: (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation ... and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

As to the first *Mathews* factor, the Court finds that Petitioner has a substantial private interest in remaining out of immigration custody because he has been released pending civil removal proceedings for over four years. Since then, he has lived freely in his community. "[His] detention denies [him] that freedom." *Omer G.G. v. Kaiser*, 815 F. Supp. 3d 1098, 1111 (E.D. Cal. 2025).

Turning to the second factor, "the risk of an erroneous deprivation [of liberty] is high" when, as here, "[the Petitioner] has not received any bond or custody redetermination hearing." *A.E. v. Andrews*, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is justified when a noncitizen presents a risk of flight or danger to the community. *See Zadvydas*, 533 U.S. at 690; *Padilla v. U.S. Immigr. & Customs Env't*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023); *Sharan S.*, 2025 WL 3167826, at *8 (E.D. Cal. Nov. 12, 2025) ("Under section 1226(a), petitioner would be entitled to a bond hearing, and any custody redetermination would have to be based on whether petitioner is 'a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk.'") (quoting *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)). The record before the Court indicates that Petitioner has no criminal history and has complied with all terms of his release. Respondents do not raise any facts to the contrary in opposition. As there have been no procedural safeguards to determine if Petitioner's re-

detention is justified, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high." *A.E.*, 2025 WL 1424382, at \*5.

The final *Mathews* factor also weighs in Petitioner's favor. Although the government has a strong interest in enforcing the immigration laws, the government's interest in detaining Petitioner without a hearing is "low." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093–95 (E.D. Cal. 2025). In immigration court, custody hearings are routine and impose a "minimal" cost. *Id*. at 1094. "If the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." *Ortega*, 415 F. Supp. 3d at 970.

## IV.    CONCLUSION AND ORDER

Accordingly, the Petition is GRANTED. IT IS HEREBY ORDERED that:

1.    Respondents immediately release Petitioner Gerardo Hernandez Ojeda (A240-650-022) from their custody.

2.    Respondents shall not impose any additional restrictions on Petitioner, unless that is determined to be necessary at a future pre-deprivation and/or custody hearing.

3.    If the government seeks to re-detain Petitioner, it must provide no less than seven (7) days' notice to Petitioner and must hold a pre-deprivation bond hearing before a neutral arbiter pursuant to section 1226(a) and its implementing regulations, at which Petitioner's eligibility for bond must be considered. This Order does not address the circumstances in which Respondents may detain Petitioner in the event Petitioner becomes subject to an executable final order of removal.

4.    The Clerk of the Court is directed to close this case and enter judgment for Petitioner. This Order resolves all pending motions.

**IT IS SO ORDERED.**

Dated: May 26, 2026

ARACELI MARTÍNEZ-OLGUÍN
United States District Judge

United States District Court
Eastern District of California

7